IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**

*Plaintiff/Appellee,*

*v.*

**CONNOR BALZAN,**
*Defendant/Appellant.*

---

No. CV-24-0140-PR
Filed July 6, 2026

---

Appeal from the Superior Court in Maricopa County
The Honorable Frank W. Moskowitz, Judge
No. CV2022-007634
**AFFIRMED**

---

Memorandum Decision of the Court of Appeals, Division One
No. 1 CA-CV 23-0564
Filed May 30, 2024
**VACATED IN PART**

---

COUNSEL:

Mick Levin (argued), Mick Levin, P.L.C., Phoenix, Attorney for Connor Balzan

Joel DeCiancio (argued), Christopher Robbins, Hill, Hall, Stark & Ferraro, PLC, Scottsdale, Attorneys for State Farm Mutual Automobile Insurance Company

David L. Abney, Ahwatukee Legal Office, P.C., Phoenix, Attorney for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

---

JUSTICE CRUZ authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ, and JUSTICES BOLICK, BEENE, MONTGOMERY, and KING joined.

——————

JUSTICE CRUZ, Opinion of the Court:

¶1        Arizona's Uninsured/Underinsured Motorist ("UM/UIM") Act permits a person who is covered by more than one automobile insurance policy to collect benefits from multiple policies for loss flowing from a single car accident or claim.  A.R.S. § 20-259.01.  In the insurance realm, this practice is commonly referred to as "stacking."  Stacking is permitted unless the insurer includes clear and unambiguous policy language expressly prohibiting it.  *See Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 412 ¶ 11 (2023).  Today, we are asked to decide whether multiple insured individuals who jointly purchase multiple insurance policies from the same insurer constitute "one insured" under A.R.S. § 20-259.01(H).  For the following reasons, we hold that they do.

## BACKGROUND

¶2        Connor Balzan and his family are insured under various automobile policies sold by State Farm.[1]  Connor is part of his parents' household.  A 2013 Hyundai Elantra policy ("Hyundai Policy") insures Connor and his father, Russell, for up to $250,000 in UIM coverage.  Another four policies insure Russell and Connor's mother, Kimberly, and each policy provides underinsured motorist ("UIM") insurance coverage in the amount of $250,000 per person.  These four additional policies cover a 2001 Jeep Wrangler, a 2007 Mercedes S550, a 2016 Infiniti QX80, and a 2015 Kia Soul ("Household Policies").  The parties agree that the Hyundai policy was purchased by Connor, and the Household Policies were paid with Russell and Kimberly's community funds.

¶3        On April 5, 2019, Connor was the passenger in a motor vehicle accident.  Connor sustained injuries with expenses exceeding the insurance coverage of the responsible party.  The parties agree that Connor is entitled to coverage under his State Farm UIM policy for the Hyundai.  And State Farm paid the policy limits to Connor for that vehicle's coverage.

——————

[1] To differentiate between the Balzans, we refer to them by their first names.

Additionally, because it deemed the Household Policies to have been purchased by an insured other than Connor, State Farm paid the policy limits under one of the Household Policies but denied Connor's demand to stack coverage for the remaining three Household Policies. In declining to pay UIM benefits for coverage related to the remaining three Household Policies, State Farm cited the anti-stacking provision included in all five policies:

> If multiple policies or coverages purchased from the ***State Farm Companies*** by one ***insured*** on different vehicles provide Underinsured Motor Vehicle Coverage which applies to the same accident or claim, the ***insured*** shall select one of these policies or coverages to apply to the accident. Only the one policy selected by the ***insured*** shall apply and no coverage will be provided by any of the other policies.

**¶4**　　State Farm's rationale for denying additional UIM benefits was premised on the fact that Russell and Kimberly were joint purchasers of the four Household Policies and deemed to be "the insured" to whom the anti-stacking provision applied. State Farm determined the anti-stacking provision dictated that "[o]nly the one policy selected by the ***insured*** shall apply and no coverage will be provided by any of the other policies."

**¶5**　　State Farm sued for declaratory relief and later moved for summary judgment. Connor filed a cross-motion for summary judgment alleging that four different insureds (Russell, Kimberly, Connor, and his sister, Madison) each purchased the various Household Policies and, thus, the anti-stacking provision did not apply. Connor contended that Russell and Kimberly are two insureds, not one, and that Madison purchased the Kia policy because she had arranged to reimburse Kimberly for the Kia policy payments.[2] The superior court granted State Farm's motion for summary judgment and denied Connor's cross-motion.

---

[2] The court of appeals held that the term "purchased" does not include reimbursements for premium payments and that Connor cannot establish a reasonable expectation that Madison was a purchaser of the policy. *State Farm Mut. Auto. Ins. Co. v. Balzan*, No. 1 CA-CV 23-0564, 2024 WL 2783789, at *4 ¶ 17 (Ariz. App. May 30, 2024) (mem. decision). We denied review of this issue and do not address it.

**¶6** The court of appeals affirmed the grant of summary judgment in favor of State Farm. *Balzan*, 2024 WL 2783789, at *4 ¶ 21. However, the court disagreed with the determination that Russell and Kimberly constitute "one insured" for purposes of A.R.S. § 20-259.01(H). *Id.* at *3 ¶ 14. Given that if Russell or Kimberly were injured by an underinsured motorist either would be entitled to UIM benefits and § 20-259.01(B)'s provision and UIM coverage "extends to and covers all persons insured under the policy," the court reasoned that Russell and Kimberly are two insureds and not one. *Id.* (quoting § 20-259.01(B)). The court also concluded that "if the [L]egislature wanted to treat married couples as one insured for purposes of § 20-259.01(H), it would have expressly done so." *Id.*

**¶7** Even though it decided that Russell and Kimberly are not "one insured," the court of appeals held that, because they jointly purchased the Household Policies, they are jointly subject to the limitations of the anti-stacking provision. *Id.* ¶¶ 15–16. Consequently, the court concluded that Connor was ineligible to stack the Household Policies and recover additional UIM benefits. *Id.* ¶ 16.

**¶8** We granted review because the interpretation of statutory language in insurance matters is a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

**DISCUSSION**

**¶9** Summary judgment may be granted only if there are no genuine issues of material fact, and one party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We review questions of law de novo when determining the merits of summary judgment and view the facts "in a light most favorable to the party against whom summary judgment was granted." *In re Estate of Podgorski*, 249 Ariz. 482, 484 ¶ 8 (App. 2020).

**¶10** "We review issues construing statutes and rules de novo." *Ariz. Pub. Integrity All. v. Fontes*, 250 Ariz. 58, 61 ¶ 8 (2020). And "we begin with the text" when construing statutes. *Franklin*, 255 Ariz. at 411 ¶ 8. We also interpret statutes "according to the plain meaning of the words in their broader statutory context, unless the [L]egislature directs us to do otherwise." *In re Drummond*, 257 Ariz. 15, 21 ¶ 19 (2024) (quoting *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023)). If a statute's text is clear and unambiguous, it controls unless it results in an

absurdity or a constitutional violation. *4QTKIDZ, LLC v. HNT Holdings, LLC*, 253 Ariz. 382, 385 ¶ 5 (2022).

¶11  We resolve the question before us by determining the meaning of "purchased by one insured" in § 20-259.01(H). That provision states:

> Uninsured and underinsured motorist coverages are separate and distinct and apply to different accident situations. Underinsured motorist coverage shall not provide coverage for a claim against an uninsured motorist in addition to any applicable uninsured motorist coverage. If multiple policies or coverages *purchased by one insured* on different vehicles apply to an accident or claim, the insurer may limit the coverage so that only one policy or coverage, *selected by the insured*, shall be applicable to any one accident. If the policy does not contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection, within thirty days after the insurer receives notice of an accident, the insurer shall notify the insured in writing of the insured's right to select one policy or coverage. For the purposes of this subsection, "insurer" includes every insurer within a group of insurers under a common management.

§ 20-259.01(H) (emphasis added). Here, when the statutory language is read in accordance with ordinary grammar and usage, the "one insured" referenced as the purchaser of multiple policies or coverages is the same "insured" later mentioned in the same section authorized to select the one policy or coverage that applies to the accident.

¶12  In addition, we read statutory language in context, not in isolation. *See Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 385 ¶ 11 (2023). Therefore, we must consider subsection (B) of the statute, which refers to a "named insured":

> Every insurer writing automobile liability or motor vehicle liability policies shall also make available to the *named insured* thereunder and shall by written notice offer the *named insured* and at the request of the *named insured* shall include within the policy underinsured motorist coverage

that extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. . . . The policy declarations page must be sent to the *named insured*, constitutes the final expression of the *named insured's* decision to purchase or reject underinsured motorist coverage and is valid for, extends to and covers all persons insured under the policy. . . . At the request of the *named insured*, the *named insured* may purchase and the insurer shall then include within the policy underinsured motorist coverage that extends to and covers all persons insured under the policy in any amount authorized by the insured up to the liability limits for bodily injury or death contained within the policy.

§ 20-259.01(B) (emphasis added).

¶**13** Although subsection (H) appears to contemplate the named insured, the phrase "purchased by one insured" creates an ambiguity in the statute. The statute does not define "insured," and the phrase is reasonably susceptible to more than one interpretation. On one hand, "insured" could refer to any person who contributed funds toward the premium payment. On the other, it could refer to the person who purchased the policy or coverage by accepting the insurer's offer of coverage and entering into the insurance contract. Because both readings are plausible, the text alone does not resolve the phrase's meaning.

¶**14** This case resembles *Franklin*, where we confronted a similar ambiguity in subsection (H). *See* 255 Ariz. at 414 ¶ 20. There, the dispute centered on the phrase "coverages purchased." *Id.* at 415 ¶ 24. The insured sought to stack UIM coverages within a single policy — a practice commonly known as intra-policy stacking, as opposed to inter-policy stacking, which involves stacking coverages from separate policies covering different vehicles. *Id.* at 411 ¶ 4. The insurer argued that the policy provided only one UIM coverage and therefore offered nothing additional to stack. *Id.* ¶ 6. We concluded that the phrase "coverages purchased" did not unambiguously answer that question. *Id.* at 414 ¶ 20. Rather, "the statute's text [was] ambiguous," requiring a resort to secondary interpretive tools. *Id.* at 412 ¶ 9. After examining the statute's history and purpose, we determined that subsection (H) treats a multi-vehicle policy as providing

6

separate UIM coverage for each covered vehicle. *Id.*

**¶15**     A similar interpretive problem exists here.  Just as the phrase "coverages purchased" did not clearly identify the unit of coverage in *Franklin*, the phrase "purchased by one insured" does not clearly identify who qualifies as the relevant insured.  The phrase "one insured" is susceptible to more than one reasonable interpretation.  Dictionary definitions suggest that "insured" may mean a person or entity that obtains insurance or is otherwise covered by an insurance policy.  *See Insured*, Black's Law Dictionary (6th ed. 1990).  Under that reading, "one insured" could reasonably be understood to mean a single insured person, as Connor argues.  Alternatively, "one insured" could reasonably be understood to refer to the principal or primary insured under the policy.  That interpretation would support State Farm's position that the phrase may encompass coverage extending to more than one person.

**¶16**     When statutory language is ambiguous, we employ secondary methods of statutory construction, including considering the statute's "spirit and purpose" and the "consequences of competing interpretations." *State v. Serrato*, 259 Ariz. 493, 496 ¶ 9 (2025) (quoting *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142 ¶ 17 (2024)); *State v. Luviano*, 255 Ariz. 225, 229 ¶ 12 (2023) (holding that because the statutory language was susceptible to two reasonable interpretations and therefore ambiguous, the court "must turn to secondary methods of statutory construction to ascertain its meaning").

**¶17**     Section 20-259.01 must be construed as a whole.  Subsection (H) does not regulate automobile insurance generally; it governs only UM/UIM coverage.  *See Am. Fam. Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 491 ¶¶ 13–14 (2012).  The meaning of "purchased by one insured" therefore must be informed by the remainder of the statute, which establishes who may obtain, reject, and select UM/UIM coverage.  Reading subsection (H) in isolation would sever that phrase from the statutory framework that gives it meaning and effect.

**¶18**     That statutory framework identifies the named insured as the purchaser of UM/UIM coverage.  Section 20-259.01 requires insurers to offer coverage only to the named insured, who alone possesses the statutory authority to accept or reject the offer.  *See* § 20-259.01(B); *Beaver v. Am. Fam. Mut. Ins. Co.*, 234 Ariz. 584, 586 ¶ 7 (App. 2014).  Once made, that

election governs the policy and determines the coverage available to all persons insured under it. The statute does not contemplate separate coverage elections by resident relatives, permissive users, passengers, or other insureds. *See Lawrence v. State Farm Mut. Auto. Ins. Co.*, 184 Ariz. 145, 148 (App. 1995). Thus, the named insured functions as the statutory purchaser of UM/UIM coverage on behalf of all insureds covered by the policy.

¶19 Connor's contrary interpretation would undermine that statutory framework. If every insured who contributed toward a premium qualified as a purchaser, subsection (B)'s assignment of a single coverage election to the named insured would lose much of its force. Purchaser status would depend on tracing financial contributions rather than identifying who exercised the statutory authority to procure coverage, potentially creating multiple statutory purchasers for a single policy and leaving insurers unable to determine the scope of subsection (H) from the policy itself. The better reading is that purchaser status turns on who procured the coverage, not on who contributed funds toward its cost.

¶20 Reading "one insured" to refer to the named insured who exercised the statutory authority to obtain UM/UIM coverage harmonizes subsection (H) with the remainder of § 20-259.01 and gives effect to the Legislature's allocation of decision-making authority.

¶21 This interpretation also best advances the statute's purposes. Section 20-259.01 is remedial and generally favors coverage. *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 314 ¶ 11 (2000). At the same time, subsection (H) reflects the Legislature's decision to permit insurers to limit stacking under specified circumstances. *See Franklin*, 255 Ariz. at 412 ¶ 10. Interpreting "one insured" to include every person who contributed funds toward a premium would substantially narrow subsection (H)'s application and upset the balance the Legislature struck between broad compensation and reasonable limits on multiple recoveries.

**¶22** Arizona case law likewise reflects the understanding that the purchaser of UM/UIM coverage is the named insured. Although courts discussing subsection (H) have often referred to "the insured" or "an insured," those references necessarily concern the named insured who obtained the coverage through the statutory offer-and-acceptance process. *See, e.g.*, *Sharp*, 229 Ariz. at 491 ¶ 13; *Franklin*, 255 Ariz. at 410 ¶ 1. Subsection (H) operates only in the context of UM/UIM coverages and authorizes the named insured to accept or reject those coverages under § 20-259.01. Consequently, when Arizona courts discuss an insured purchasing UM/UIM coverage, they are necessarily referring to the named insured who exercised the statutory right to accept the insurer's offer.

**¶23** Finally, we observe that State Farm's policy language is consistent with this interpretation. The policies define "insured" as "you," and "you" refers to the named insureds listed in the declarations. Thus, for the policies at issue, both Russell and Kimberly qualify as insureds because both are named insureds. Although that policy definition does not answer the statutory question, it confirms that the relevant actors under the policy are the named insureds identified in the declarations. Under the State Farm policy, references to an insured purchasing UM/UIM coverage concern the named insureds who procured the coverage, not every person who may have contributed funds toward the premium or later benefited from the coverage.

**¶24** Community property principles do not alter the analysis. Community property law generally governs the ownership of property acquired during marriage and the spouses' respective rights and obligations with respect to that property and to third-party creditors. *See* A.R.S. §§ 25-211, -214. It does not, however, merge spouses into a single legal person or prevent either spouse from acting independently. *Eng v. Stein*, 123 Ariz. 343, 346 (1979) (holding that a judgment for damages and the foreclosure of a materialman's lien against community property was void insofar as it purported to bind the wife, who was neither named nor served, and her community, but remained valid and enforceable against the husband separately). Rather, Arizona law recognizes that either spouse generally may manage and control community property and may bind the marital community through his or her individual acts. *See* § 25-214(B); *Selby v. Savard*, 134 Ariz. 222, 229 (1982).

9

**¶25** Arizona courts have likewise recognized that marriage does not extinguish the spouses' separate legal identities. *See Lorenz-Auxier Fin. Grp., Inc. v. Bidewell*, 160 Ariz. 218, 220–21 (App. 1989) (rejecting the notion that a husband and wife constitute a single legal entity and recognizing that each spouse retains a separate legal identity). And community property principles concern ownership interests in property, not the authority of spouses to act independently in contractual matters. *See Hrudka v. Hrudka*, 186 Ariz. 84, 91 (App. 1995). Thus, even assuming the premiums were paid with community funds, that fact does not establish that both spouses independently purchased the policy or coverage for purposes of § 20-259.01(H). The relevant question is not whose money funded the premium payment, but who exercised the statutory authority to obtain UM/UIM coverage. Section 20-259.01 assigns that authority to the named insured who received and accepted the insurer's offer of coverage. *See Beaver*, 234 Ariz. at 586 ¶ 7.

**¶26** Community property law neither expands the class of statutory purchasers nor transforms every spouse with a community property interest in premium payments into a separate purchaser of the policy. Indeed, making community funds dispositive would inject domestic-relations principles into a statute that nowhere references marriage, spouses, or community property and would cause subsection (H)'s application to turn on the source of premium funds rather than on the statutory election that created the coverage. State Farm has argued that *State Farm Mutual Automobile Insurance Co. v. Lindsey*, 180 Ariz. 456 (App. 1994), *vacated*, 182 Ariz. 329 (1995), properly relied on community property principles to determine who "purchased" the coverage. To the extent *Lindsey* ever so relied, it answered a property-ownership question rather than the statutory question presented by § 20-259.01(H): who exercised the legal authority to obtain the coverage? *See* 180 Ariz. at 461. Thus, *Lindsey* is inapposite.

**¶27** Regardless of which factual characterization ultimately applies, subsection (H) yields the same legal result. First, the evidence could establish that one spouse acted to procure each policy and therefore purchased the policy or coverage within the meaning of subsection (H). Under that approach, the purchaser is the person who exercised the legal authority to obtain the policy by applying for coverage, accepting the insurer's offer, and entering into the insurance contract. The source of the funds used to pay the premium is immaterial. A person purchases

insurance by procuring it, not merely by contributing money toward its cost. If the evidence shows that, acting on behalf of both, Russell procured some policies and Kimberly procured others, then the policies were purchased by one insured within the meaning of subsection (H).

¶28 Alternatively, the evidence could establish that Russell and Kimberly acted together to procure the policies. In that circumstance, they jointly exercised the statutory authority to obtain UM/UIM coverage. Because subsection (H) identifies the purchaser by reference to the exercise of that statutory authority—not by the number of individuals participating in the transaction—the two named insureds function collectively as the single statutory purchaser and therefore constitute "one insured" for purposes of subsection (H). Because Connor maintained his own policy whereas his parents either jointly purchased the remaining policies or procured coverage on behalf of each other, State Farm did not err in invoking the anti-stacking provision and treating Connor's policy as one source of coverage and his parents' policies as a second source, thereby permitting recovery under Connor's policy and one of his parents' policies.

¶29 Any broader interpretation would create substantial practical difficulties and undermine subsection (H)'s anti-stacking function. If "purchased by one insured" includes every person who contributes funds toward the premium, the number of purchasers would become effectively limitless. A spouse who contributes community funds, a child who contributes money toward household expenses, or any other person whose funds indirectly help pay the premium could claim purchaser status. Under that approach, the identity of the purchaser would turn on tracing financial contributions rather than identifying who exercised the legal authority to obtain coverage. A single policy could have multiple, perhaps innumerable, purchasers, rendering subsection (H)'s reference to coverage "purchased by one insured" largely meaningless. Such a construction would vitiate subsection (H) by transforming virtually every jointly funded policy into one purchased by multiple insureds and dramatically restricting the statute's intended limitation on stacking. The more coherent interpretation is that purchaser status turns on the act of procuring coverage, not on the source of the funds used to pay for it.

¶30 We, therefore, conclude that subsection (H)'s phrase "purchased by one insured" refers to the named insured purchaser under § 20-259.01(B) who exercised the legal authority to obtain UM/UIM coverage. Where

multiple named insureds jointly procure coverage, they function as a single purchasing unit and therefore constitute "one insured" for purposes of subsection (H). Although ambiguous in isolation, the phrase becomes clear when § 20-259.01 is read as a whole. The Legislature assigned the decision to purchase UM/UIM coverage to the named insured purchaser and made that decision binding on all insureds under the policy. The statute's purpose confirms that reading. Because Russell and Kimberly either purchased the Household Policies jointly as named insureds or one acted on behalf of both in procuring the coverage, the policies were purchased by one insured within the meaning of subsection (H). State Farm, therefore, properly limited recovery pursuant to the anti-stacking provision.

## CONCLUSION

¶**31** For the foregoing reasons, we vacate ¶¶ 12–16 of the court of appeals' memorandum decision and affirm the superior court's grant of summary judgment in favor of State Farm.